**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

———————————————————
                                    :
VICTOR MOORE,                       :
                                    :          Civil Action
              Plaintiff,            :          06-4516 (RMB)
                                    :
         v.                         :          **O P I N I O N**
                                    :
CUMBERLAND COUNTY                   :
BOARD OF FREEHOLDERS, et al.,       :
                                    :
              Defendants.           :
———————————————————:


**APPEARANCES:**

     VICTOR MOORE, Plaintiff pro se
     #48737
     Cumberland County Jail
     Bridgeton, New Jersey 08302


**Renée Marie Bumb, District Judge**

     Plaintiff VICTOR MOORE (hereinafter "Plaintiff") currently confined at Cumberland County Jail, Bridgeton, New Jersey, seeks to bring this 42 U.S.C. § 1983 action in forma pauperis without prepayment of fees pursuant to 28 U.S.C. § 1915.  Plaintiff submitted his (1) affidavit of indigence and institutional account statement pursuant to 28 U.S.C. § 1915(a) (1998); and (2) his complaint (hereinafter "Complaint").   In addition, Plaintiff submitted his application for appointment of pro bono counsel.

Based on his affidavit of indigence and the absence of three qualifying dismissals within 28 U.S.C. § 1915(g), the Court will grant plaintiff's application to proceed <u>in forma pauperis</u> pursuant to 28 U.S.C. § 1915(a) (1998) and order the Clerk of the Court to file the Complaint.

<u>**BACKGROUND**</u>

Plaintiff's Complaint asserts that

[o]n April 3, 2006, [Plaintiff] was forced . . . to move to a part of the jail that ha[d] known and reputed members of the "Blood" street gang housed [(hereinafter] "dorm"[). Plaintiff] advised [the prison] officers [that Plaintiff] felt concerned for his . . . safety by being placed within this hostile environment . . . . These officers did nothing to remedy [Plaintiff's] concern . . . . After [Plaintiff was] transferred to this dorm[,] . . . he was severely beaten and assaulted by these gang members for an hour before any officer arrived and [this beating] resulted in [Plaintiff's] severe head trauma that [caused Plaintiff's] stay at the South Jersey Medical Center for a month.

Compl. at 7. Plaintiffs brings this action seeking compensatory damages and naming the following parties as Defendants:

(a) Cumberland County Board of Chosen Freeholders (hereinafter "County"), asserting that this Defendant violated Plaintiff's civil rights by failing to ensure that Plaintiff would not be harmed and by placing Plaintiff in "overcrowded conditions," <u>id.</u> at 5;

(b) Warden Saunder (hereinafter "Warden"), asserting that this Defendant "fail[ed] to implement a proper classification

system" capable of  ensuring that Plaintiff would not be harmed, id. at 5;

(c)   Lieutenant Morales, Sergeants Charleston and Falconire, and Officer McCado (hereinafter, collectively, "Officers"), asserting that these Defendants failed to protect Plaintiff after Plaintiff notified the Officers that he feared for his safety.  Id. at 7-9.

## STANDARD OF REVIEW

In 1996, Congress enacted the Prison Litigation Reform Act ("PLRA"), Title VIII of the Omnibus Consolidated Rescissions and Appropriations Act of 1996, Pub. L. No. 104-134, 110 Stat. 1321 (April 26, 1996).  Congress's purpose in enacting the PLRA was "primarily to curtail claims brought by prisoners under 42 U.S.C. § 1983 and the Federal Tort Claims Act . . . many of which are routinely dismissed as legally frivolous." Santana v. United States, 98 F.3d 752, 755 (3d Cir. 1996).  A crucial part of the congressional plan for curtailing meritless prisoner suits is the requirement, embodied in 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b), that a court must dismiss, at the earliest practicable time, any prisoner actions that are frivolous or malicious, fail to state a claim, or seek monetary relief from immune defendants.  However, in determining the sufficiency of a complaint, the Court must be mindful to construe it liberally in favor of the plaintiff.  See

Haines v. Kerner, 404 U.S. 519 (1972); United States v. Day, 969 F.2d 39, 42 (3d Cir. 1992).  The Court should "accept as true all of the allegations in the complaint and reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff."  Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997).  The Court need not, however, lend credit to a pro se plaintiff's "bald assertions" or "legal conclusions." Id.  Thus, "[a] pro se complaint may be dismissed for failure to state a claim only if it appears 'beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'"  Milhouse v. Carlson, 652 F.2d 371, 373 (3d Cir. 1981) (quoting Haines v. Kerner, 404 U.S. 519, 520 (1972)).

## DISCUSSION

To state a claim under 42 U.S.C. § 1983, a plaintiff must meet two threshold requirements.  He must allege: (1) that the alleged conduct was committed by a person acting under color of state law; and (2) as a result, the plaintiff was deprived of rights, privileges, or immunities secured by the Constitution or laws of the United States.  See West v. Atkins, 487 U.S. 42 (1988); Parratt v. Taylor, 451 U.S. 527, 535 (1981), overruled in part on other grounds, Daniels v. Williams, 474 U.S. 327, 330-331 (1986).  Since there appears to be no doubt that Defendants' actions in the case

at bar were done under color of state law, the Court's analysis is limited solely to the second prong of the inquiry.

Liberally construing Plaintiff's Complaint, the Court interprets it as asserting three types of claims: (a) conditions of confinement claim based on Plaintiff's assertion that he was placed in "overcrowded conditions"; (b) failure to protect claim against the Officers based on Plaintiff's assertion that Plaintiff sought but was denied protection; and (c) vicarious liability claims against the County and Warden.

## I.   Conditions of Confinement Claim

The Eighth Amendment prohibits infliction of cruel and unusual punishment, thus mandating prison officials to provide humane conditions of confinement.  The Constitution, however, "does not mandate comfortable prisons," Rhodes v. Chapman, 452 U.S. 337, 349 (1981), and prison officials must merely ensure that inmates receive adequate food, clothing, shelter and medical care, plus must "take reasonable measures to guarantee the safety of the inmates." Farmer v. Brennan, 511 U.S. 825, 832 (1994) (quoting Hudson v. Palmer, 468 U.S. 517, 526-27 (1984)).  To state a claim under the Eighth Amendment, an inmate must allege both objective and subjective components. See Wilson v. Seiter, 501 U.S. 294, 298 (1991). The objective component mandates that "only those deprivations denying 'the minimal civilized measure of life's necessities' . . . are sufficiently grave to form the basis of an

Eighth Amendment violation," Helling, 509 U.S. at 32 (quoting Rhodes v. Chapman, 452 U.S. 337, 346 (1981)), hence requiring that the deprivation sustained by a prisoner be "extreme deprivations." Hudson v. McMillian, 503 U.S. 1, 9 (1992). The subjective component requires that the state actor have acted with "deliberate indifference," that is, with a state of mind equivalent to a reckless disregard of a known risk of harm. See Farmer, 511 U.S. at 835; Wilson, 501 U.S. at 303. In sum, an inmate may satisfy (1) the objective component by showing that he was deprived of "the minimal civilized measure of life's necessities," such as adequate food, clothing, shelter, sanitation, medical care and personal safety, Rhodes v. Chapman, 452 U.S. at 347-48; Young v. Quinlan, 960 F.2d 351, 364 (3d Cir. 1992), and (2) the subjective component by demonstrating that prison officials knew of such substandard conditions or treatment and "acted or failed to act with deliberate indifference to a substantial risk of harm to inmate health or safety." Ingalls v. Florio, 968 F. Supp. 193, 198 (D.N.J. 1997).

    In the case at bar, Plaintiff's allegations are limited to the fact that Plaintiff was placed in "overcrowded conditions." See Compl. at 5. However, the case law clearly indicates that only such overcrowding that the sole fact of overcrowding is insufficient to state a federal claim under § 1983. See Nami v. Fauver, 82 F.3d 63, 66-67 (3d Cir. 1996) (noting that only if the facilities are so overcrowded that an inmate has to sleep on the

floor by the toilet in a cell which is very small, with so small windows that it is difficult to summon help, and these conditions result in rapes and assaults, and the inmate is deterred from visiting doctors to who may attend the inmate's injury, such housing conditions "can amount to an Eighth Amendment violation [but only] if combined with other adverse conditions"); accord Liles v. Camden County Dep't of Corrections, 225 F. Supp. 2d 450, 462 (D.N.J. 2002) (denying the defendants' motion for summary judgment on the allegation that fighting broke out when inmates were splashed with urine as they slept on the floors of their cells next to the toilets). Alternatively, a constitutional violation may be found if overcrowded conditions are accompanied by other substandard factors, such as poor "repair and functioning of basic physical [prison] facilities such as plumbing, ventilation and showers, . . . food, medical care, sanitation, control of vermin, lighting, heating, ventilation, noise level, bedding, furniture, education and rehabilitation programs, safety and security and staffing." Tillery v. Owens, 907 F.2d 418, 427 (3d Cir. 1990). Applying these factors, the Tillary court found an Eighth Amendment violation where the inmates slept on bunk beds, and the other conditions at the prison included overcrowded spaces in which the inmates spent the vast majority of their time, bad lighting, rampant assault due to understaffing, little to no cleaning, a major vermin problem, inadequate plumbing, unsanitary and

unsupervised showers, inadequate fire safety, and deficient medical and psychiatric treatment.  See id. at 422-24.   Conversely, a non-discriminatory practice of temporary placing inmates in overcrowded conditions does not amount to a cruel and unusual punishment.  See North v. White, 152 Fed. Appx. 111 (3d Cir. 2005)(finding no Eighth Amendment violation where, due to a temporary influx of inmates, the facility resorted to triple-celling of one-third of inmates for a month, since the facility was otherwise well maintained; and ventilation, light, sanitation and food met applicable minimal standards); Hubbard v. Taylor, 399 F.3d 150 (3d Cir. 2005) (conducting a nearly-identical inquiry with respect to pre-trial detainees under the Due Process Clause and finding that two-to-seven-month of triple-celling in a cell designed for one did not constitute a violation, and relying on Bell v. Wolfish, 441 U.S. 520 (1979), the case where no violation was found with respect to 30-to-60-days confinement of two inmates in a cell designed for one); see also Brookins v. Williams, 402 F. Supp. 2d 508 (D. Del. 2005) (finding no constitutional violation where, over the period of five days, an inmate was placed in a cell with two other inmates and forced to eat near the toilet, not allowed to exercise).

In the case at bar, Plaintiff's allegations are limited to the sole claim that Plaintiff was placed in "overcrowded conditions." See Compl. at 5.  The Complaint is silent as to any alternative

bedding arrangements being available to--but not used by--the prison officials, or as to any substandard physical conditions of confinement. <u>See</u> <u>generally</u>, Compl. In sum, Plaintiff is simply dissatisfied with the sole fact that the jail was overcrowded. <u>See</u> <u>id.</u> at 5. However, Plaintiff's dissatisfaction with the fact of overcrowding cannot amount to a cruel and unusual punishment since the overcrowding neither deprives Plaintiff of "the minimal civilized measure of life's necessities," nor indicates that prison officials "acted . . . with deliberate indifference." <u>Compare</u> <u>Fuentes v. N.J. Office of the Pub. Defenders</u>, 2006 U.S. Dist. LEXIS 1147 (D.N.J. Jan. 11, 2006) (finding that a violation could possibly be detected where, during the period of three months, the inmates were forced to sleep on thin plastic mattresses on a cold and filthy concrete floor, with poor ventilation and in unsanitary conditions, and these conditions led to spread of infections and disease). Hence, Plaintiff's conditions of confinement allegations fail to state a claim upon which relief may be granted.

## II.  Failure to Protect Claim Against the Officers

Plaintiff further asserts that, as a result of the inactions of the Officers, Plaintiff was denied protection and incurred serious injuries. Prison officials have a duty under the Eighth Amendment to "take reasonable measures to guarantee the safety of the inmates." <u>Farmer v. Brennan</u>, 511 U.S. 825, 832 (1994) (quoting

Hudson v. Palmer, 468 U.S. 517, 526-7 (1984)). To state a failure-to-protect claim under 42 U.S.C. § 1983, an inmate must show that he is objectively "incarcerated under conditions posing a substantial risk of serious harm" and that the Defendant knows of and disregards that risk. Farmer, 511 U.S. at 837. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id. Therefore, in order to prevail on his 42 U.S.C. § 1983 claim asserting that his constitutional rights were violated because of the actions of certain officers, an imminent threat to Plaintiff's health and/or life must arise. Specifically, Plaintiff must show that: (1) he was "incarcerated under conditions posing a substantial risk of serious harm"; and (2) that the officers expressly intended to cause Plaintiff harm or knew and disregarded the risk of harm to Plaintiff. See Farmer, 511 U.S. at 837; Whitley v. Albers, 475 U.S. 312, 319 (1985). Since it appears that the allegations set forth in Plaintiff's Complaint indicate that there might be a valid basis to Plaintiff's failure to protect claim, this claim will proceed past the sua sponte dismissal stage.


**III. Vicarious Liability Claims Against the County and Warden**

Plaintiff finally asserts that the County and Warden are liable for the injuries that Plaintiff suffered as a result of

being placed in the dorm with the "Blood" gang members.  However, a local government entity, like the County, "cannot be held liable solely because it employs a tortfeasor."  <u>Monell v. New York City Dept. of Social Services</u>, 436 U.S. 658, 691 (1978).  "[I]t is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts and acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983."  <u>Monell</u>, 436 U.S. at 694.  "Policy is made when a 'decisionmaker possess[ing] final authority to establish municipal policy with respect to the action' issues an official proclamation, policy, or edict."  <u>Berg v. County of Allegheny</u>, 219 F.3d 261, 275 (3d Cir. 2000) (quoting <u>Pembaur v. City of Cincinnati</u>, 475 U.S. 469, 481 (1986)).

In this case, nothing alleged in the Complaint supports an inference that Plaintiff's placement in the dorm housing the "Blood" gang members, or Plaintiff's injuries suffered as a result of the gang members' assault, resulted from the execution of a policy or custom of the County.  Therefore, Plaintiff's allegations against the County fail to state a claim upon which relief may be granted and will be dismissed.

Similarly, Plaintiff's allegations against the Warden fail to state a claim upon which relief may be granted.  It is settled law that supervisory prison personnel may be held liable under § 1983 only if their own actions caused the constitutional deprivation.

See Keenan v. City of Philadelphia, 983 F.2d 459, 466 (3d Cir. 1992).  A supervisor may be held liable for the actions of subordinates only if the plaintiff can show that the supervisor: (a) participated in violating the plaintiff's rights; (b) directed others to violate them; (c) as the person in charge, had knowledge of and acquiesced in his or her subordinates' violations; or (d) tolerated past or ongoing misbehavior.  See Baker v. Monroe Township , 50 F.3d 1186, 1190-91 (3d Cir. 1995); Friedland v. Fauver, 6 F. Supp.2d 292, 302-03 (D.N.J. 1998).  Furthermore, where a plaintiff seeks to establish liability based on a supervisor's failure to train or supervise adequately, the plaintiff must show that a need for more or different training or supervision was so obvious, and the inadequacy so likely to result in constitutional violations, that the failure to train or supervise could fairly be said to represent official policy.  See City of Canton v. Harris, 489 U.S. 378, 388-92 (1989); Stoneking v. Bradford Area School Dist., 882 F.2d 720, 724-26 (3d Cir. 1989), cert. denied, 493 U.S. 1044 (1990).

From the facts alleged in the Complaint, it appears that Plaintiff's claims against the Warden are based solely on an impermissible theory of respondeat superior or vicarious liability. See  Polk County v. Dodson, 454 U.S. 312, 324 (1981) (stating that a § 1983 claim cannot be based on respondeat superior liability); Monell v. Department of Social Services of City of New York, 436

U.S. 658 (1978) (holding that supervisory personnel are liable under § 1983 only if they have some personal role in causing the alleged harms or were responsible for some custom or practice which resulted in the violations). Consequently, the claims against the Warden will be dismissed for failure to state a claim upon which relief may be granted, pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

## IV.  Appointment of Counsel

Although prisoners have no constitutional or statutory rights to appointment of counsel in federal habeas corpus proceedings, see Coleman v. Thompson, 501 U.S. 722, 752 (1991), the court has broad discretionary power to appoint counsel to a financially eligible habeas petitioner if "the interests of justice so require . . . ." See 18 U.S.C. § 3006A(a)(2); see also Montgomery v. Pinchak, 294 F.3d 492, 498 (3d Cir. 2002) (citing Tabron v. Grace, 6 F.3d 147, 153 (3d Cir. 1993)). In Tabron, the Third Circuit Court of Appeals developed a list of criteria to aid the district courts in weighing the appointment of counsel for indigent civil litigants. As a threshold matter, a district court must assess whether the claimant's case has some arguable merit in fact and law.  See Tabron, 6 F.3d at 155. If a claimant overcomes this threshold hurdle, the Third Circuit identified a number of factors that a court should consider when assessing a claimant's request for

counsel.   These include (a) the claimant's ability to present his own case, (b) the difficulty of the particular legal issues, (c) the degree to which factual investigation will be necessary and the ability of the claimant to pursue investigation, (d) the claimant's capacity to retain counsel on his own behalf, (e) the extent to which the case is likely to turn on credibility determinations, and (f) whether the case will require testimony from expert witnesses. See id. at 155-157.   Furthermore, the appointment of counsel for an indigent litigant should be made when circumstances indicate "the likelihood of substantial prejudice to him resulting, for example, from his probable inability without such assistance to present the facts and legal issues to the court in a complex but arguable meritorious case."   Smith-Bey v. Petsock, 741 F.2d 22, 26 (3d Cir. 1984).   Here, Plaintiff's complaint fails to set forth sufficient circumstances to warrant appointment of counsel.   The sole surviving issue is Plaintiff's failure to protect claim, and Plaintiff can conduct the necessary discovery of his medical record.   Therefore, Plaintiff's application for appointment of counsel will be denied without prejudice as premature and not in the interests of justice at this stage of litigation.

## CONCLUSION

For the reasons stated in this Opinion, Plaintiff's application to proceed in forma pauperis is GRANTED. Plaintiff's claim against Defendants Falconire, Charleston, Morales and McCade based on failure to protect in violation of Plaintiff's Eighth Amendment rights will proceed past sua sponte dismissal to the next stage. Plaintiff's remaining claims will be dismissed with prejudice for failure to state a claim upon which relief may be granted. Plaintiff's application for appointment of pro bono counsel will be denied without prejudice as premature and not in the interests of justice.

An appropriate Order accompanies this Opinion.

s/Renée Marie Bumb
**Renée Marie Bumb**
**United States District Judge**

Date: November 16, 2006